**Howard PRITCHETT et ux., Appellants,**

v.

**Percy B. HENRY, Appellee.**

No. 5095.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 1, 1955.

Harry H. Brochstein, Houston, for appellants.

Aaron Goldfarb, Houston, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in one of the district courts of Harris County. The appeal was transferred to this court from the Court of Civil Appeals for the First Supreme Judicial District by order of the Supreme Court.

Howard Pritchett and his wife, Clyda Pritchett, the appellants, filed their suit against the appellee, Percy B. Henry, and certain life insurance companies; they alleged that they are the parents of Melba Henry, who had been the wife of appellee Percy B. Henry; that on or about January 8, 1955 Percy B. Henry shot and killed his wife, Melba Henry, unlawfully and illegally killing and murdering her in Houston, Harris County, Texas; they further alleged that on said date of the alleged killing there was in existence the will of Melba Henry and that after her death such will was admitted to probate in the Probate Court of Harris County, Texas, and that said Percy B. Henry is named as beneficiary in said will. They further alleged that at the time of the alleged willful killing of Melba Henry by her husband, Percy B. Henry, there were in existence several policies of life insurance insuring the life of Melba Henry and the said Percy B. Henry was the beneficiary in said life insurance policies. They further alleged that they were the next of kin of the deceased, Melba Henry, after the appellee Percy B. Henry, and prayed the court to forfeit the interests of the appellee Henry in all policies of life insurance by virtue of Article 21.23 of the Insurance Code of Texas, V.A.T.S.

They also prayed the court to declare the will of Melba Henry, deceased, inoperative as to any of the terms thereof which make Percy B. Henry beneficiary and also to declare and impress upon the property passing by inheritance from Melba Henry, deceased, to Percy B. Henry a constructive trust for the benefit of the appellants as the heirs of the said Melba Henry, deceased, other than Percy B. Henry.

They also alleged that the appellee, Percy B. Henry, had been indicted by the Harris County Grand Jury for the murder of his wife, Melba Henry, the daughter of the appellants.

They also alleged an action in tort against Percy B. Henry for the wrongful death of Melba Henry.

The appellee answered by plea in abatement, alleging that the first and third counts of the original petition filed by the appellants failed in their entirety to allege a cause of action upon which judgment might be awarded to appellants, as a matter of law. These two counts related to the causes of action alleged other than the pleading as to the proceeds of the life insurance policies on the life of Melba Henry, deceased.

The trial court, upon a hearing of the pleas in abatement, sustained the contentions of the appellee and dismissed the cause of action of the appellants as to all matters alleged except those involving the proceeds of the life insurance policies. By stipulation between the parties the suit involving the insurance proceeds was severed from the other causes of action pleaded and no appeal is taken from the court's order or judgment in regard to the proceeds of the life insurance policies. The appellants, however, have perfected their appeal from the order of the court sustaining the plea in abatement. In their brief appellants make no point and present no authority concerning the court's action in sustaining the plea in abatement as to their third count, the tort action for wrongful death. The trial court's action in that respect is affirmed.

This appeal squarely presents for the first time, insofar as we have been able to find from the cases reported in Texas, the law question whether in this state a person who willfully and unlawfully kills another may take title to property as an heir or legatee of his victim and retain it free of a constructive trust sought to be impressed upon such property by law for the benefit of the victim's heirs at law other than the killer.

The appellee contends that the question has long been settled in Texas under the holding in the case of Hill v. Noland, Tex. Civ.App., 149 S.W. 288. In that case, by the Texarkana Court of Civil Appeals, in 1912, the court held that our statutes provide that upon dissolution of the marriage relation by death all property belonging to the community estate of the husband and wife shall go to the survivor should there be no children or their descendants; that the article in plain and unambiguous language designates the person to whom the estate shall descend upon death and that there is neither condition nor exception debarring or forfeiting the estate or the right of succession to the wife or husband; that as the rule of inheritance is explicit and imperative, the courts would not be warranted in reading into the statute a clause disinheriting a survivor for the crime of murder-

ing the deceased spouse. The opinion further states that in such facts, that is, where the survivor had murdered the deceased spouse, it is the intestate law alone that casts the estate and right of succession to the wife, and this law is absolute and peremptory. Writ of error was denied by the Supreme Court.

We do not consider this authority as the final expression of our Supreme Court on this question. In Greer v. Franklin Life Ins. Co., 148 Tex. 166, 221 S.W.2d 857, 859, by the Supreme Court, in 1949, the opinion by Justice Garwood referred to the case of Hill v. Noland, supra, and stated, "in that case, incidentally, the more modern view of imposing a constructive trust upon property inherited by a murderer from his victim, for the benefit of the heirs other than the murderer, was evidently not suggested or considered." This decision did not involve directly the question under consideration here, but was concerned with the application of the statute which eliminates the interest of the beneficiary in a life insurance policy where the beneficiary willfully brings about the death of the insured. We look upon it, however, as a statement by our Supreme Court that it inclines to the more modern view of imposing a constructive trust upon the property inherited by a murderer from his victim.

The decision in the case of Pope v. Garrett, 147 Tex. 18, 211 S.W.2d 559, by the Supreme Court, in an opinion by the late Justice Smedley, has fully convinced us that the law in Texas now is in keeping with such a more modern view, and that the law will impress a trust upon the property of Melba Henry, deceased, which passed to Percy B. Henry, either by inheritance or as a beneficiary in her will, if the proof is sufficient to sustain the appellants' allegation that he willfully and unlawfully caused her death.

In Pope v. Garrett, supra, the facts are extraordinary and were such as to present broadly the question of whether or not the law will impress a constructive trust upon property inherited by an heir of a deceased person when such person, by his own fraud-

ulent or unlawful act, would otherwise benefit from his own wrong doing. In that case Carrie Simons, a few days before her death, had her will prepared leaving all of her property to Claytonia Garrett, who was not related to her. The will was brought to her and read to her in the presence of witnesses she had summoned; she declared it to be her last will and as she prepared to sign her name to the will, two of her heirs by physical force or by creating a disturbance prevented her from carrying out her intention to execute the will. Shortly thereafter she' lapsed into a semi-comatose condition and died three days later. The court held that a trust would be inpressed upon the property of Carrie Simons in favor of Claytonia Garrett, and that such trust would be impressed not only upon the interests inherited by those who participated in the acts of violence that prevented the execution of the will in favor of Claytonia Garrett, but that it also should be impressed' upon the interests inherited by all the heirs of Carrie Simons. The court held this to be a case which is a typical one for the intervention of equity to prevent a wrongdoer, who by his fraud or otherwise wrongful' act has acquired title to property, from retaining and enjoying the beneficial interest therein, by impressing a constructive trust upon the property in favor of the one who is truly and equitably entitled to the` same. The court cites and quotes from numerous cases and texts which enunciate this rule. Two of the authorities cited and quoted from are Scott on Trusts, Vol. 3, Sec. 489.4 and Restatement of the Law of Restitution, Sec. 184.

We also rely on the following from Scott on Trusts, Section 492: "Acquisition of Property by Murder." In 1897 Professor James Barr Ames submitted to the legal profession a monograph discussing the question, "Can a murderer acquire title by his crime and keep it?" Professor Ames suggested three possible answers to his question: (1) that the murderer takes the property and keeps it; (2) that the murderer does not take the property; (3) that the murder takes the property but holds it upon a constructive trust. He advocated the third view, that legal title passes to the murderer but equity will treat him as a constructive trustee of the title because of the unconscionable mode of its acquisition, and compel him to convey it to the heirs of the deceased, exclusive of the murderer. Scott adopts the view that Professor Ames' answer is a sound one, as a matter of policy and as a logical application of a well-settled principle. He says that in the absence of a statute otherwise `providing, it would seem that the legal title to the property should pass to the murderer and he is chargeable as constructive trustee. This seems to be the case where the Statute of Wills and the Statute of Descent and Distribution is silent on the matter and there is no other statute with respect to it. Where the Statute of Wills and the Statute of Descent and Distribution make no provision as to the effect of murder of the decedent by the legatee or heir, the property passes under the will or by intestacy to him. It is then that the equitable principle as to unjust enrichment becomes applicable. That principle is as applicable where the title to property is acquired by murder as it is where the title is acquired by fraud, duress or undue influence. By imposing a constructive trust upon the murderer, the court is not making an exception to the provisions of the statutes, but is merely compelling a murderer to surrender the profits of his crime and thus preventing his unjust enrichment. In some cases the courts have permitted the murderer to take and keep the property of the decedent because they thought it would be a violation of the provisions of the Statute of Wills or the Statute of Descent and Distribution, to deprive him of the property. These courts, the writer says, have failed to see that in order to deprive a murderer of the property it is not necessary to make an exception to the statute; all that is necessary is to apply the well-settled equitable principle under which a constructive trust is imposed upon one who acquires property through his own wrong.

The text also discusses that same principle as applied to murder by spouse. It is pointed out that at common law the widow

of a decedent is entitled to a life interest in one-third of the land owned by her husband at any time during coverture, and that prior to his death she had an inchoate right of dower in the land, of which she cannot be deprived by his will or by a conveyance inter vivos by him without her consent. It is argued that since she has this interest during his lifetime, she should not be deprived of it even though she murders him. It would seem, however, that she should not be permitted to profit by the murder of her husband. If she had predeceased him she would have taken no interest in the land. By her felonious act she had made it certain that she survived him. It would seem, therefore, that she should be precluded from the enjoyment of her dower interest. The same consideration should apply with respect to the husband's right of curtesy where he murders his wife. By statute it is frequently provided that the surviving spouse shall have a certain share of the property of the deceased spouse if the latter dies intestate. Under such statutes it is clear that there is the same reason for imposing a constructive trust upon one spouse who murders the other as where the heir or next of kin murders him. Scott on Trusts, Sec. 492.2. We think the same reasoning applies to the question of whether this principle shall be applied under our statute of community survivorship. The surviving spouse should not be permitted to keep or enjoy the property of the community, since by his willful act he has made certain that he survives his deceased spouse and he should be precluded from keeping and enjoying property which he takes as a survivor in community.

The appellee urges here the holding in the case of Hill v. Noland, Tex.Civ.App., 149 S.W. 288, which is mentioned above. He says that our statutes in regard to Wills and Descent and Distribution are silent as to any exceptions thereto and that what the appellants are urging on this appeal is an amendment to the statutes of the State of Texas to provide an exception to our statutes of Wills and Descent and Distribution. He suggests also that the appellants should address their pleas to the legislature of the State of Texas and not to this court. We do not agree. We quote the following from the opinion in Pope v. Garrett, supra [147 Tex. 18, 211 S.W.2d 561]: "The argument is often made that the imposition of a constructive trust in a case like this contravenes or circumvents the statute of descent and distribution, the statute of wills, the statute of frauds, or particularly a statute which prohibits the creation of a trust unless it is declared by an instrument in writing. It is generally held, however, that the constructive trust is not within such statutes or is an exception to them. It is the creature of equity. It does not arise out of the parol agreement of the parties. It is imposed irrespective of and even contrary to the intention of the parties. Resort is had to it in order that a statute enacted for the purpose of preventing fraud may not be used as an instrument for perpetrating or protecting a fraud. [Citing cases.] In this case Claytonia Garrett does not acquire title through the will. The trust does not owe its validity to the will. The statute of descent and distribution is untouched. The legal title passed to the heirs of Carrie Simons when she died intestate, but equity deals with the holder of the legal title for the wrong done in preventing the execution of the will and impresses a trust on the property in favor of the one who is in good conscience entitled to it."

In keeping with the principles announced above, in this case we hold that the petition of the appellants alleged a cause of action in that it alleged a wrongful and unlawful killing of Melba Henry by the appellee Percy B. Henry; it alleged that he was a beneficiary in her will, that they had no children and as next of kin he would inherit her property as her heir even if the will was invalid; it alleged that Melba Henry was their daughter and that they were her next of kin; and it properly prayed for the imposition of a constructive trust in favor of the appellants, the parents of the deceased. We hold that it properly alleged that legal title to the property of Melba Henry, deceased, passed

to the appellee Percy B. Henry, either by inheritance or as a beneficiary in her will, and that the law imposes a constructive trust thereon for the benefit of the appellants. The judgment below is reversed and judgment here rendered, overruling the plea in abatement of the appellee as to appellants' first count in their petition. The cause is remanded to the district court for trial upon the merits.

Reversed and remanded.